http://www.va.gov/vetapp16/Files5/1639904.txt

Citation Nr: 1639904 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 14-16 642 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina

THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for lumbar strain (a low back disability).

2. Entitlement to an initial rating in excess of 10 percent for cervical strain (a neck disability).

ATTORNEY FOR THE BOARD

M. Thomas, Associate Counsel

INTRODUCTION

The Veteran, who is the appellant in this case, served on active duty from July 2006 to July 2012.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

This appeal was previously remanded by the Board in November 2015. Pursuant to the Board's remand directives, the AOJ attempted to schedule the Veteran for a VA examination. However, the Veteran refused examination without explaining her reasons. Under the circumstances, this appeal must be decided based on the evidence of record. See 38 C.F.R. § 3.655(b). Therefore, the Board finds that there has been substantial compliance with the Board's remand directives. Stegall v. West, 11 Vet. App. 268 (1998) (finding that a remand by the Board confers on the Veteran the right to compliance with its remand orders). The Board notes that the United States Court of Appeals for Veterans Claims (Court) has indicated that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance." D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall (Stegall, 11 Vet. App. 268) violation when the examiner made the ultimate determination required by the Board's remand).

FINDINGS OF FACT

1. For the entire rating period on appeal, the Veteran's low back disability has been manifested by painful motion, and did not manifest in forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; combined range of motion of the throacolubmar spine not greater than 120 degrees; muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; favorable or unfavorable ankylosis of the thoracolumbar spine or entire spine; or incapacitating episodes due to intervertebral disc syndrome that required bed rest prescribed by a physician and treatment by a physician.

2. For the entire rating period on appeal, the Veteran's neck disability has been manifested by a combined range of motion of 300 degrees, but did not manifest in forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; combined range of motion of the cervical spine not greater than 170 degrees; muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; favorable or unfavorable ankylosis of the cervical spine or entire spine; or incapacitating episodes due to intervertebral disc syndrome that required bed rest prescribed by a physician and treatment by a physician.

CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for degenerative disc disease of the lumbar spine have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.10, 4.71a, Diagnostic Code (DC) 5242 (2015).

2. The criteria for an initial rating in excess of 10 percent for degenerative disc disease of the cervical spine have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.10, 4.71a, DC 5242 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Clams Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015).

As noted above, the claims for initial compensable ratings arise from the Veteran's disagreement with the ratings assigned in connection with the grants of service connection for these disabilities. The courts have held, and VA's General Counsel has agreed, that where an underlying claim for service connection has been granted and there is disagreement as to "downstream" questions such as the propriety of the assigned rating or effective date, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314 -15 (Fed. Cir. 2007). Consequently, further discussion of the VCAA's notification requirements with regard to these claims is unnecessary. 

With regard to the duty to assist, VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, private treatment records, July 2011 VA examination, and the Veteran's statements. VA attempted to obtain an additional VA examination, but the Veteran refused to schedule the examination. As was alluded to in the Introduction section of this decision, when a claimant fails to report to an examination scheduled in conjunction with an original claim without good cause, the claim shall be rated based on the evidence of record. 38 C.F.R. § 3.655(a), (b). As stated by the Court, the "duty to assist is not always a one-way street" and the veteran is obliged to cooperate in the development of the pending claim. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Therefore, the Board will decide this matter based on the evidence of record as it currently stands

As such, the RO has provided assistance to the Veteran as required under 
38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). Hence, no further notice or assistance to the Veteran is required to fulfill VA's duties to notify and assist in the development of these claims.

Laws and Regulations - Increased Rating

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1 (2015); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Staged ratings are appropriate for any initial rating claim when the factual findings show distinct time periods during the appeal period where the service-connected disability exhibits symptoms that would warrant different ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. 
§ 4.7 (2015). Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3 (2015).

It is possible for a Veteran to have overlapping disabilities which are attributable to distinct diseases or injuries. Pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a veteran's service-connected disability. 
38 C.F.R. § 4.14 (2015). 

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. 
§ 3.102 (2015).

Increased Rating for a Low Back Disability - Analysis

The Veteran is currently in receipt of a 10 percent initial rating for a low back disability. The low back disability is rated under 38 C.F.R. § 4.71a, DC 5237, for lumbar strain.

Disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes). Ratings under the General Rating Formula for Diseases and Injuries of the Spine are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease.

The General Rating Formula for Diseases and Injuries of the Spine provides a 10 percent rating for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height.

A 20 percent rating is provided for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a.

A 40 percent disability rating is provided for forward flexion of the thoracolumbar spine 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. Id.

A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine. Id.

A 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. Id.

Note (1) to the rating formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code. 38 C.F.R. § 4.71a.

Note (2) (See also Plate V) provides that, for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. Id.

Note (3) provides that, in exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted. Id.

Note (4) instructs to round each range of motion measurement to the nearest five degrees. Id.

Note (5) provides that, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id.

Under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes, a rating of 40 percent is warranted for incapacitating episodes with a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. A maximum rating of 60 percent is warranted for incapacitating episodes with a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a, IVDS Formula. For these purposes, an incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1).

As an initial matter, the Board notes that the Veteran is a physician. Therefore, the Board finds her to be competent to opine on matters requiring the expertise of a medical professional. 

A December 2010 service medical record indicated that the Veteran had been diagnosed, based on MRI evidence, with degenerative disk disease in the lumbar spine at L4-5 and L5-S1.

The Veteran was afforded a pre-discharge VA examination in July 2011. She reported being diagnosed with lumbar degenerative disc disease four years earlier. She reported symptoms of stiffness, paresthesia, and numbness. She denied experiencing fatigue, spasms, decreased motion, weakness, and bowel and bladder impairment. She reported experiencing constant pain, located mostly on the L4-L5 joint. She described the pain as localized, moderate, and exacerbated physical activity. She described functional impairments of limited overall physical activating, carrying, and lifting.

The VA examiner stated that the Veteran's posture was normal and she walked with a normal gait. There was no evidence of radiating pain on movement, muscle spasm, tenderness, guarding of movement, or weakness. Muscle tone and musculature were normal. There was negative straight leg raising bilaterally, and Lasegue's sign was negative. There was no atrophy present in the limbs, and no ankylosis of the thoracolumbar spine. Flexion was 90 degrees, with pain at 90 degrees. The combined range of motion of the thoracolumbar spine was 240 degrees. There was no additional loss of range of motion after repetitive use, including as due to pain, fatigue, weakness, lack of endurance, or incoordination. There was symmetry of spinal motion with normal curves of the spine. The sensory examination was normal bilaterally. There was no evidence of peripheral nerve involvement during examination. There were no signs of lumbar IVDS with chronic and permanent nerve root involvement.

An October 2012 private treatment note indicated that the Veteran had thoracolumbar muscle spasm and tenderness. Range of motion of the thoracolumbar spine was moderately restricted in forward flexion. Lumbar extension was moderately restricted, with pain. Bilateral lateral benign was moderately to markedly restricted. Bilateral rotation was moderately restricted, with pulling and pain. Straight leg raise was negative. She was diagnosed with an acute traumatic myofascial lumbar sprain, related to a recent motor vehicle accident. 

A January 2013 private treatment note indicated that the Veteran had returned to per-accident status. There was no palpable spasm, calor, or tenderness. Motions of the lumbar spine were without subjective complaint in all plains. Orthopedic evaluation was unremarkable, and neurological evaluation revealed no motor or sensory deficit.

In the February 2013 Notice of Disagreement, the Veteran stated that her low back disability was improperly rated as lumbar strain, when she had been diagnosed with chronic degenerative disc disease with herniations and nerve root impingements, as well as degenerative joint disease of the lumbar spine. She stated that this caused her pain and disability on a daily basis. She was unable to run or squat without pain. Her activities of daily living, recreational activities, and sleep were all affected by her chronic lower back pain. She reported seeing a chiropractor at least twice a month.

In August 2013, the Veteran's treating chiropractor stated that the Veteran described her pain as a constant "dull, achy" pain that can become worse with prolonged standing, prolonged sitting, multiple bending, and long hours of treating patients. 

In her May 2014 substantive appeal, the Veteran stated that she suffered from daily stiffness in her lower back limiting her range of motion. She stated that she had exacerbations of her lower back pain for at least two weeks several times per year.

Based on the above, the lay and medical evidence of record establishes that the Veteran's low back disability warrants a rating of 10 percent, and no higher, for the entire period on appeal. 38 C.F.R. §§ 4.3, 4.7 (2015). The only range of motion report was in the July 2011 VA examination, in which lumbar forward flexion was 90 degrees and the combined thoracolumbar range of motion was 240 degrees. The lay and medical evidence of record indicates that the Veteran has experienced chronic daily pain of the lumbar spine. The weight of the evidence, lay and medical, does not demonstrate that there is forward flexion of the thoracolumbar spine not greater than 85 degrees; combined range of motion of the thoracolumbar spine not greater than 235 degrees; muscle spasm, guarding, or localized tenderness, vertebral body fracture with loss of 50 percent or more of the height; or, ankylosis as is required for a compensable rating under 38 C.F.R. § 4.71 (a), DC 5237. 

The July 2011 VA examination report indicates that the Veteran experiences painful motion of the lumbar spine. 38 C.F.R. § 4.59 notes that the intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Therefore, it is the intention to recognize actually painful joints as entitled to at least the minimum compensable rating for the joint. Therefore, the Board finds that the Veteran is entitled to an initial 10 percent rating, the minimum compensable rating, for a low back disability, based on objective evidence of painful motion. See 38 C.F.R. § 4.59.

The Board has also considered application of 38 C.F.R. §§ 4.40 and 4.45, and DeLuca for the entire appeal period, specifically the additional limitations of motion due to pain, fatigability, and weakness, in reaching the finding that a disability rating in excess of 10 percent is not warranted. Although the record contains reports that the Veteran experienced pain during range of motion testing, such findings do not provide for rating in excess of 10 percent in this case. The only range of motion report was in the July 2011 VA examination, in which pain was noted on extension and flexion, but no additional loss of range of motion due to pain was noted. The DeLuca factors go to additional loss of function caused by limitation of motion due to pain, fatigability, and weakness. Even with consideration of the additional limitation of motion due to pain, the low back disability does not manifest in forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; or, ankylosis of the lumbar spine or entire spine. Therefore, a 10 percent rating under the General Rating Formula for Disease and Injuries of the Spine and 38 C.F.R. § 4.59 is appropriate, and a higher rating is not warranted. 

Neither the July 2010 VA examination report nor the private treatment records indicated that the Veteran had IVDS. While Veteran reported having exacerbations of her low back pain for at least two weeks several times per year, there is nothing in the evidence to suggest that these exacerbations required both bed rest prescribed by a physician and treatment by a physician. For this reason, the Board finds that a disability rating under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes is not warranted. See 38 C.F.R. § 4.71a. 

The Board has also considered the application of other relevant diagnostic codes. The Board notes that the Veteran's low back disability is currently rated under DC 5237, as lumbar strain. In a February 2013 statement, the Veteran stated that rating her low back disability as lumbar strain reflected an improper diagnosis, as she had been diagnosed with degenerative disc disease of the lumbar spine by a December 2010 MRI. The Veteran is a physician and competent to opine on medical issues. Degenerative arthritis of the spine is properly rated under DC 5242. Both DC 5237 and DC 5242 are rated according to the General Rating Formula for Disease and Injuries of the Spine. Therefore, the Veteran's neck disability is more accurately described by DC 5242, and there is no prejudice to the Veteran in changing the relevant diagnostic code from DC 5237 to DC 5242.

38 C.F.R. § 4.71a, Note (6) provides that DC 5242 for degenerative arthritis of the spine can also be rated under DC 5003. DC 5003 provides that degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. Here, the Veteran is in receipt of a 10 percent rating based on painful motion under DC 5242 and 38 C.F.R. § 4.59. Therefore, no additional consideration of DC 5003 is required.

With respect to the Veteran's claim for a higher evaluation of her low back disability as manifested neurologically, the Board must consider the potential application of various other provisions of the regulations concerning VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability in reaching its decision. Schafrath, 1 Vet. App. at 595. The Board has considered whether a separate rating is warranted for any objective neurologic abnormalities. However, no objective neurologic abnormalities are noted in the record. Therefore, the weight of the evidence of record indicates that no further discussion of separate ratings for objective neurologic abnormalities is warranted.

For these reasons, and resolving all reasonable doubt in favor of the Veteran, the Board finds the weight of evidence does not support an initial disability rating in excess of 10 percent for a low back disability. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7, 4.59, 4.71a.

Increased Rating for a Neck Disability - Analysis

The Veteran is currently in receipt of a 10 percent initial rating for a neck disability. The neck disability is rated under 38 C.F.R. § 4.71a, DC 5237, for cervical strain.

As described above, disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes). 

The General Rating Formula for Diseases and Injuries of the Spine provides a 10 percent rating for forward flexion of the cervical spine greater than 30 degrees but not greater than 10 degrees; or combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height.

A 20 percent rating is provided for forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a.

A 30 percent disability rating is provided for flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine. Id.

A 40 percent disability rating is provided for unfavorable ankylosis of the entire cervical spine. Id.

A 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. Id.

A December 2010 service medical record indicated that the Veteran had been diagnosed, based on MRI evidence, with mild degenerative disk disease in the cervical spine, extending from C3-4 through C6-7 levels.

The Veteran was afforded a VA examination in July 2011. She reported being diagnosed with cervical degenerative disc disease. She stated that she could walk without limitation, and had symptoms of stiffness, paresthesia, and numbness. She denied experiencing fatigue, spasms, decreased motion, and weakness. She also denied having any bowel or bladder problems related to her cervical spine condition. She reported experiencing constant, localized, and moderate pain located on the base of the occiput. The pain was exacerbated by physical activity. Flare-ups caused the functional impairment of pain. She denied being incapacitated due to her neck disability during the prior 12 months. She reported being unable to lift heavy weights. 

Upon examination, there was no evidence of radiating pain on movement, muscle spasm, tenderness, guarding, weakness, loss of tone and atrophy of the limbs. There was no ankylosis of the cervical spine. Flexion was 50 degrees, with pain at 45 degrees. Left and right rotations were both 80 degrees, with pain beginning at 60 degrees. Extension was 45 degrees, with pain at 45 degrees, and lateral flexion was 45 degrees bilaterally, with pain at 45 degrees. Combined cervical range of motion was 300 degrees. There was no additional loss of range of motion after repetitive use, including as due to pain, fatigue, weakness, lack of endurance, or incoordination. There were no signs of cervical IVDS with chronic and permanent nerve root involvement.

An October 2012 private treatment note indicated that the Veteran had constant pain, stiffness, and spasms about the neck, with an intermittent "burning at the base of the neck and upper back and radiating to the shoulders bilaterally. She also complained of intermittent headaches starting at the base of the neck and upper back and radiating to the posterior skull. Range of motion of the cervical spine was markedly restricted in forward flexion, with pain. Cervical extension, bilateral lateral bending, and bilateral rotation were all moderately restricted, with pain. She was diagnosed with an acute traumatic myofascial cervical sprain, with cephalgia and neuritis/radiculitis resulting, related to a recent motor vehicle accident. 

A January 2013 private treatment note indicated that the Veteran had returned to per-accident status. There was no palpable spasm, calor, or tenderness. Motion of the cervical spine was without subjective complaint in all plains. Orthopedic evaluation was unremarkable, and neurological evaluation revealed no motor or sensory deficit.

In the February 2013 Notice of Disagreement, the Veteran stated that her neck disability was improperly rated as cervical strain, and should be rated based on her actual diagnosis of chronic degenerative disc disease with herniations as well as degenerative joint disease of the cervical spine. She stated that her neck disability caused her pain and disability on a daily basis. She said that her activities of daily living, recreational activities, and sleep were all affected by her chronic cervical spine pain. She indicated that she saw a chiropractor at least twice a month to treat her neck disability symptoms.

In the May 2014 substantive appeal, the Veteran stated that her cervical spine disability caused daily pain and dysfunction. She stated that she suffered from daily tension headaches and stiffness in her neck, limiting her range of motion. She stated that she suffered frequent exacerbations of her neck pain for at least two weeks several times per year.

Based on the above, the lay and medical evidence of record establishes that the Veteran's neck disability warrants a rating of 10 percent, and no higher, for the entire period on appeal. 38 C.F.R. §§ 4.3, 4.7 (2015). The only range of motion report was in the July 2011 VA examination, in which cervical forward flexion was limited to 50 degrees and the combined cervical range of motion was 300 degrees, with pain limiting the left and right cervical rotation. This combined range of motion is consistent with the criteria for a 10 percent disability rating, as the combined cervical range of motion was greater than 170 degrees but not greater than 335 degrees. The lay and medical evidence of record indicates that the Veteran has experienced chronic daily pain of the cervical spine. The weight of the evidence, lay and medical, does not demonstrate that there is muscle spasm or guarding severe enough to result in an abnormal gain or abnormal spinal contour, cervical flexion greater than 15 degrees but not greater than 30 degrees, or combined cervical range of motion not greater than 70 degrees, as is required for a 20 percent rating under 38 C.F.R. § 4.71 (a), DC 5237. 

The Board has also considered application of 38 C.F.R. §§ 4.40 and 4.45, and DeLuca for the entire appeal period, specifically the additional limitations of motion due to pain, fatigability, and weakness, in reaching the finding that a disability rating in excess of 10 percent is not warranted. Although the record contains reports that the Veteran experienced pain during movement testing, such findings do not provide for rating in excess of 10 percent in this case. The worst range of motion report was in the July 2011 VA examination, in which left and right cervical rotation was limited to 60 degrees due to pain. The DeLuca factors go to additional loss of function caused by limitation of motion due to pain, fatigability, and weakness. Even with consideration of the additional limitation of motion due to pain, the low back disability does not manifest in forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; or, ankylosis of the cervical spine or entire spine. Therefore, a 10 percent rating under DC 5237 and 38 C.F.R. § 4.59 is appropriate, and a higher rating is not warranted. 

The Board has also considered the application of other relevant diagnostic codes. The Board notes that the Veteran's neck disability is currently rated under DC 5237, as cervical strain. In a February 2013 statement, the Veteran stated that rating her neck disability as cervical strain reflected an improper diagnosis, as she had been diagnosed with degenerative disc disease of the cervical spine by a December 2010 MRI. The Veteran is a physician and competent to opine on medical issues. Degenerative arthritis of the spine is properly rated under DC 5242. Both DC 5237 and DC 5242 are rated according to the General Rating Formula for Disease and Injuries of the Spine. Therefore, the Veteran's neck disability is more accurately described by DC 5242, and there is no prejudice to the Veteran in changing the relevant diagnostic code from DC 5237 to DC 5242.

38 C.F.R. § 4.71a, Note (6) provides that DC 5242 for degenerative arthritis of the spine can also be rated under DC 5003. DC 5003 provides that degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. Here, the Veteran is in receipt of a 10 percent rating based on limitation of motion under DC 5242. Therefore, no additional consideration of DC 5003 is required.

Neither the July 2010 VA examination report nor the private treatment records indicated that the Veteran had IVDS. While Veteran reported having exacerbations of her neck pain for at least two weeks several times per year, there is nothing in the evidence to suggest that these exacerbations required both bed rest prescribed by a physician and treatment by a physician. For this reason, the Board finds that a disability rating under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes is not warranted, and the Veteran's neck disability is properly rated under DC 5242. See 38 C.F.R. § 4.71a. 

With respect to the Veteran's claim for a higher evaluation of her neck disability as manifested neurologically, the Board must consider the potential application of various other provisions of the regulations concerning VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability in reaching its decision. Schafrath, 1 Vet. App. at 595. The Board has considered whether a separate rating is warranted for any objective neurologic abnormalities. The only objective neurologic abnormality noted in the record that is attributable to the service-connected cervical spine disability is chronic headaches.

In the May 2014 substantive appeal, the Veteran stated that her cervical spine disability caused daily tension headaches. There is no evidence of neurological testing related to headaches in the record, and it is unclear whether these headaches are of such severity to be separately compensable. Furthermore, the Veteran refused further VA examinations related to her neck disability. Therefore, the weight of the evidence of record does not indicate that a separate rating for headaches is appropriate.

For these reasons, and resolving all reasonable doubt in favor of the Veteran, the Board finds the weight of evidence does not support an initial disability rating in excess of 10 percent for a neck disability. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7, 4.71a.

Extraschedular Consideration

As to consideration of referral for an extraschedular rating, such consideration requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating criteria adequately contemplate the Veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If her disability picture meets the second inquiry, then the third step is to refer the case to the Director of Compensation Service to determine whether an extraschedular rating is warranted.

Turning to the first step, the Board finds that the symptomatology and impairment caused by the Veteran's low back and neck disabilities are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The schedular rating criteria specifically provide for ratings based on limitation of motion, including due to pain, stiffness, and other orthopedic factors. See 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, 4.125a; see also DeLuca at 202. In this regard, the Veteran's low back and neck disabilities are manifested by symptoms of limitation of motion, painful motion, fatigability, and pain on prolonged standing, bending, or sitting. The Board has additionally considered ratings under alternate schedular rating criteria as discussed above. See 38 C.F.R. § 4.20; see also Schafrath, 1 Vet App. at 595. 

Additionally, the Veteran has not asserted, and the evidence of record has not suggested, any combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. As such, the Board finds that the Rating Schedule is adequate to evaluate the Veteran's current disabilities and symptomatology. Therefore, in the absence of exceptional factors, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. 
§ 3.321(b)(1) are not met. Thun, 22 Vet. App. at 115-16; Johnson, 762 F.3d 1362; Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

The Board has considered whether the issue of entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities was reasonably raised by the record in this case. Rice v. Shinseki, 22 Vet. App. 447 (2009). However, in this case, neither the evidence nor the Veteran suggests unemployability due to her service-connected disabilities. Therefore, entitlement to a TDIU is not considered part of the present appeal.

ORDER

Entitlement to an initial disability rating in excess of 10 percent for a lumbar spine disability is denied.

Entitlement to an initial disability rating in excess of 10 percent for a cervical spine disability is denied.

____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs